UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CYNTHIA ALVARADO | : | |
| Petitioner, | : | |
| | : | |
| v. | : | No. 2:16-cv-3586 |
| | : | |
| | : | |
| JOHN E. WETZEL, | : | |
| Secretary of the Pennsylvania Dept. of | : | |
| Corrections, *et al.*, | : | |
| Respondents. | : | |
| | : | |

**O P I N I O N**
**Report and Recommendation, ECF No. 17—Adopted in Part, Rejected in Part**
**Petition for Writ of Habeas Corpus, ECF No. 1—Granted**

**Joseph F. Leeson, Jr.**                                                                 **July 10, 2019**
**United States District Judge**


I.      **INTRODUCTION**

Petitioner Cynthia Alvarado is serving a life sentence following a Pennsylvania state

conviction for robbery and second degree murder. Alvarado was the getaway driver following

the robbery of a drug dealer during which a bystander was shot and killed. The prosecution tried

her on an accomplice liability theory. Following direct appeal and postconviction proceedings in

Pennsylvania state court, Alvarado filed a petition for habeas corpus before this Court under 28

U.S.C. § 2254. A Report and Recommendation (R&R) has been prepared and Alvarado has filed

objections, ECF No. 22.

Alvarado's first claim in her petition involves the trial judge's written response to a

question from the jury during deliberations concerning accomplice liability. Alvarado argues that

the judge's response suggested that the jury could convict her on an accomplice liability theory

based on the *actus reus* element alone without any finding that Alvarado had the *mens rea*, or intent element, necessary for accomplice liability. Alvarado contends that the judge's instruction relieved the prosecution of its burden of proving her intent and therefore violated her federal due process rights and that her trial counsel was ineffective for failing to object to this constitutional error.

The Court finds that this claim entitles Alvarado to habeas relief on her claim of ineffective assistance of trial counsel. Her claim is procedurally defaulted because, even though she raised the ineffectiveness of trial counsel during her postconviction proceedings, she did not raise ineffectiveness based on the due process argument she now presents in her habeas petition. However, Alvarado's claim meets the *Martinez v. Ryan* exception because the Court concludes that her postconviction counsel was ineffective for failing to recognize and argue the due process issue and trial counsel's ineffectiveness for failing to object to a due process violation. Because the Court finds that Alvarado's first claim entitles her to a new trial, it does not address her second claim, alleging ineffective assistance of trial counsel on a different basis.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On July 15, 2010, following a jury trial before the Honorable M. Teresa Sarmina in the Court of Common Pleas of Philadelphia County, Alvarado was found guilty of second degree murder and robbery. Alvarado was tried jointly with her cousin and boyfriend, co-defendant Oscar Alvarado. *Commonwealth v. Alvarado*, No. CP-51-CR-1257-2009, slip op. at 1  (C.P. Phila. Apr. 19, 2011).  Following her conviction, Alvarado was sentenced to a mandatory term of

---

[1]     The Court approves and adopts the R&R's statement of the background and procedural history and reproduces it, with minor formatting and stylistic changes, to provide context for this opinion. *See* R&R 1-6, ECF No. 17.

life imprisonment for the second degree murder conviction; the robbery conviction merged with the second degree murder conviction for purposes of sentencing. *Id.*

The evidence at trial was as follows.

At approximately 4:20 p.m. on October 21, 2008, the victim, Marta Martinez, was shot and killed by Alvarado's co-defendant Oscar Alvarado at the Fairhill Square Park located in Philadelphia. N.T. 7/13/10, at 188.

Earlier that same afternoon, at approximately 3:00 p.m., Alvarado and Oscar Alvarado had purchased Xanax from a person in the park, which is well-known for the illegal sale of prescription medication. N.T. 7/12/10, at 97, 102; N.T. 7/13/10, at 200. Alvarado drove Oscar Alvarado to the park. While Oscar Alvarado was in the park purchasing the pills, Alvarado waited across the street in her car, a red Honda Civic. N.T. 7/12/10, at 92; 7/13/10, at 202. While waiting, Alvarado encountered a childhood friend, Maiced Beltran. N.T. 7/12/10, at 92-95. Alvarado offered Ms. Beltran a ride, which she accepted. When Oscar Alvarado returned with the drugs, they each ingested multiple Xanax pills. *Id.* at 96.

The trio spent an hour driving to various locations, with Alvarado driving, Oscar Alvarado sitting in the passenger seat, and Ms. Beltran and Alvarado's one-year old daughter sitting in the back seat. N.T. 7/13/10, at 202. At some point during this time, Oscar Alvarado pulled a gun out from underneath his seat and showed it to Alvarado and Ms. Beltran. At approximately 4:00 p.m., the trio decided to obtain more Xanax and returned to the park. N.T. 7/12/10, at 104-08. At some point during this time, Alvarado drove to the park and parked nearby. Upon arriving, Ms. Beltran suggested to Oscar Alvarado that he try to "get a play," meaning to get extra pills in addition to the number for which they paid. *Id.* at 110-11. As Oscar Alvarado began to walk away from the car and into the park to get the drugs, Alvarado called

him back and stated, "Cuz, you know, you know what to do. You know, if they don't give you a play, just pull that shit out." *Id.* at 112. Ms. Beltran understood this to mean that Alvarado was suggesting to Oscar Alvarado that he use his gun. *Id.* at 114. Ms. Beltran became upset at Alvarado for making this statement and began yelling at her. *Id.* at 113-15. Oscar Alvarado then left the vehicle and walked into the park. *Id.* at 115. The victim, a homeless woman, was standing near the parked vehicle.

Oscar Alvarado approached a male drug dealer in the park, pulled the gun out of his waistband, stuck it in the drug dealer's midsection, and took a bottle of Xanax that the drug dealer was holding in his hand. N.T. 7/9/10, at 65-71; N.T. 7/13/10, at 202. Oscar Alvarado turned around and began walking back to the vehicle. The drug dealer began yelling, "He robbed me!" and this was repeated by other people in the park, including the victim. Some people started following Oscar Alvarado, who turned towards the people following him, and then began to run towards the car. Oscar Alvarado entered the front passenger side of the vehicle. N.T. 7/9/10, at 71-74; N.T. 7/12/10, at 115-19. The victim approached the vehicle and attempted to look into the driver's side window. N.T. 7/9/10, at 80-81. Oscar Alvarado reached across the driver's seat and shot the victim through the partially open driver's side window. *Id.* at 80-84; N.T. 7/12/10, at 131-32, 214. Oscar Alvarado then opened the passenger door, reached over the hood of the car, and fired two to three more shots into the park. N.T. 7/9/10, at 84-85; N.T. 7/12/10, at 32, 125-26, 218; 7/13/10, at 200. Oscar Alvarado got back into the car and said, "Pull off, pull off." N.T. 7/13/10, at 200. Alvarado then drove away from the park and exclaimed: "That's why he loves me. That's why we ride or die." N.T. 7/12/10, at 129.

As the three individuals left the park, they ingested more Xanax from the bottle they had stolen from the drug dealer. N.T. 7/12/10, at 136-37. The group drove to various locations,

including Alvarado's father's house, where Alvarado traded the Honda Civic for her father's red Dodge pickup truck. *Id.* at 141-42; 7/13/10, at 203. After leaving that house, the group purchased a vial of the drug angel dust. N.T. 7/12/10, at 140-41. The group ended their journey at Alvarado's apartment. *Id.* at 144-45; N.T. 7/13/10, at 118.

Approximately four hours later, Police Officer Michaeleen Christy received a radio call that the shooter and driver were located inside Alvarado's apartment. As Officer Christy approached the location, a female matching the description of the driver opened the front door. N.T. 7/7/10, at 33-34. This female, Alvarado, was placed inside the police vehicle at the location at approximately 8:30 p.m. *Id.* at 35. While in the police car, Alvarado called Police Officer Goodwin over to the car and made several statements to him regarding her involvement in the crime. N.T. 7/13/10, at 120-21, 124, 128-29. Alvarado also was positively identified by another eyewitness to the shooting, Maria Schermety, while Alvarado was detained in the police car.

At trial, the judge instructed the jury four times concerning accomplice liability. The judge gave an instruction before the jury began deliberating and then twice more during deliberations when the jury asked for clarification. The final instruction responded to a written question from the jury: "Does aiding <u>after</u> a crime in itself constitute accomplice liability?" N.T. 7/15/2010, at 8 (emphasis in original). After discussing the question with counsel, the trial court concluded that the correct answer to the question was "It could," and sent a written answer to that effect. N.T. 7/15/10, at 9-13.

After the jury convicted her, Alvarado, still represented by her trial counsel, filed a direct appeal from the judgment raising only one issue: "Did the trial court commit legal error by instructing the jury that she could be convicted under the accomplice theory solely by aiding after the crime had been committed?" *Commonwealth v. Alvarado*, 53 A.3d 933 (Table), No.

3289 EDA 2010, slip op. at 5 (Pa. Super. Ct. June 19, 2012). On June 19, 2012, the Superior

Court of Pennsylvania affirmed the judgment of sentence. The Supreme Court of Pennsylvania

denied Alvarado's request for review. *Commonwealth v. Alvarado*, No. 151 ET 2012 (Pa. Oct. 5,

2012) (Table).

Alvarado filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act

("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, *et seq.* Counsel was appointed and filed an amended

PCRA petition. Alvarado raised two issues:

1. Trial counsel was ineffective for failing to object to the court's response to a

   question regarding accomplice liability sent out by the jury during deliberations.

2. Trial counsel was ineffective for failing to object when the court responded to the

   jury's question in writing.

*Commonwealth v. Alvarado*, No. CP-51-CR-1257-2009, slip op. at 2, 6 (C.P. Phila. May 14,

2014). On May 14, 2014, the PCRA court dismissed the PCRA petition as meritless. *Id.* The

Superior Court of Pennsylvania affirmed the dismissal on February 19, 2015. *Commonwealth v.

Alvarado*, 2015 WL 5787528, No. 1923 EDA 2014 (Pa. Super. Ct. Feb. 19, 2015). On June 30,

2015, the Supreme Court of Pennsylvania denied Alvarado's request for review. *Commonwealth

v. Alvarado*, 117 A.3d 1280 (Pa. 2015) (Table).

Alvarado filed the instant counseled habeas petition on June 29, 2016, ECF No. 1, and a

Memorandum of Law in Support of the Habeas Petition on August 18, 2016, ECF No. 5. In her

habeas petition, Alvarado asserts two grounds for habeas relief:

1. Trial counsel was ineffective for failing to properly object to the Court's written

   response to a jury question which allowed the jury to find petitioner guilty even if

   she was solely an accessory after the fact.

2. Trial counsel was ineffective for failing to impeach Maiced Beltran, the state's main witness, with the fact that she had an open felony criminal case at the time of her testimony.

Petition ¶12.

Alvarado also requests discovery and an evidentiary hearing. Pet.'s Memo. of Law at 28-30, ECF No. 5. Respondents filed a response on April 3, 2017, arguing that the petition should be denied because Alvarado's claims are procedurally defaulted and/or meritless. ECF No. 11. Alvarado filed a reply on May 19, 2017. ECF No. 16.

## III. LEGAL STANDARD

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process"). "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)." *Hill v. Barnacle*, 655 F. App'x. 142, 147 (3d Cir. 2016). The district court "may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C) (2009).

## IV.    ALVARADO'S OBJECTIONS TO THE R&R

The R&R recommends that Alvarado's petition be denied with respect to both claims she presents. Alvarado objects to the R&R's determinations with respect to both claims. Because the Court determines that Alvarado is entitled to relief on her first claim, it addresses her objections only with respect to that claim.

Alvarado objects to the Magistrate Judge's conclusion that her claim based upon her trial counsel's failure to object to the judge's written supplemental jury instruction does not entitle her to relief. In her petition, Alvarado argues that her trial counsel provided ineffective assistance because he did not object to the trial court's written response to a jury question that allowed the jury to find Alvarado guilty of second degree murder solely as an accessory after the fact. Pet.'s Memo. of Law 19-20, ECF No. 5. Alvarado raises a related due process challenge as an "alternative" to her ineffective assistance claim and argues that the trial court's written answer violated her due process rights because it allowed the jury to convict her of second degree murder on an accomplice liability theory without finding all the necessary elements. Petition ¶ 12, ECF No. 1; Pet.'s Reply 6, ECF No. 16. Alvarado explains that she "wishes to preserve an independent claim" based on a due process violation. Pet.'s Memo. of Law 22.

The R&R recommends rejecting Alvarado's ineffective assistance of counsel claim based on the jury instruction issue. The R&R notes that the Pennsylvania appellate court's decision that the trial court's written supplemental jury instruction complied with state law is binding on habeas review and that the jury instructions as a whole correctly explained all the principles of accomplice liability under Pennsylvania law. R&R 19, 23. Therefore, Alvarado's trial counsel was not ineffective by not objecting to a proper jury instruction as contrary to Pennsylvania law. R&R 24. Regarding Alvarado's due process argument, the R&R states only that:

counsel would have had no basis to object to the instructions on federal due process grounds. In particular, to show that the jury instructions on accomplice liability were unconstitutional, petitioner must demonstrate that, taken as a whole, they "relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law." Petitioner has not made this showing.

R&R 24 (citation omitted).

Alvarado further develops her due process argument in her objections to the R&R. She argues that the trial court's written response to the jury's question allowed the jury to find her guilty of second degree murder on an accomplice liability theory without finding the required *mens rea* element. Pet.'s Objs. 2-3, ECF No. 22. By telling the jury that aiding after a crime "in itself" can establish accomplice liability, the trial court's written supplemental instruction relieved the prosecution of its burden of proving that Alvarado had the intent to promote or facilitate the robbery, a necessary element of accomplice liability. *Id.* By failing to object to this constitutional error, Alvarado's trial counsel rendered ineffective assistance. *Id.*

This Court believes that Alvarado's due process argument warrants further analysis and therefore writes separately to resolve Alvarado's objections. Ultimately, the Court concludes that Alvarado is entitled to relief on her ineffective assistance of counsel claim based on her trial counsel's failure to object to a due process violation.

### A.       Exhaustion and Procedural Default

Alvarado presents two separate claims relating to the trial court's written response to the jury's question about accomplice liability: (1) a freestanding due process claim that the trial court's instruction relieved the prosecution of its burden of proving every element of the charged offense beyond a reasonable doubt, and (2) a claim that her trial counsel was ineffective for failing to object to the due process violation.

Respondents contend that Alvarado did not exhaust the due process argument because she did not raise it in the state court and therefore the claim is now procedurally defaulted. Resp. in Opp. 16 n.4, ECF No. 11. Alvarado responds that she presented the due process argument on direct appeal of her conviction in the Pennsylvania Superior Court and cites sections of her direct appeal brief that she claims raised the due process issue. Pet.'s Reply 5-6 and n.2.

Habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State," meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court. 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner has exhausted a federal claim only if he or she presented the "substantial equivalent" of the claim to the state court. *Picard*, 404 U.S. at 278. To satisfy this requirement, a petitioner must "fairly present" the federal claim's "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Robinson v. Beard*, 762 F.3d 316, 328 (3d Cir. 2014); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *see McCandless*

*v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made," *Anderson v. Harless*, 459 U.S. 4, 6 (1982), as the petitioner "must have communicated to the state courts in some way that [the petitioner was] asserting a claim predicated on federal law." *McCandless*, 172 F.3d at 261. The Third Circuit has interpreted this requirement liberally and has identified four ways in which a defendant may "fairly present" a federal claim to a state court, beyond explicit reference to the federal Constitution:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, "include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

*Evans v. Court of Common Pleas, Delaware Cnty., Pa.*, 959 F.2d 1227, 1232 (3d Cir. 1992) (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)).

Alvarado did not fairly present her due process claim to the Pennsylvania courts as an independent claim. She contends that she did and cites in support a section of her brief on direct appeal, where she raised the single issue of "whether the trial court commit[ted] legal error by instructing the jury that she could be convicted under an accomplice liability theory solely by aiding after a crime had been committed[.]" *Commonwealth v. Alvarado*, 53 A.3d 933 (Table), No. 3289 EDA 2010, slip op. at 5 (Pa. Super. Ct. June 19, 2012). Alvarado argues that the following section of her direct appeal brief fairly presented her federal due process argument:

> The Court committed legal error and Appellant was convicted of these charges because the Court's response to this question permitted the jury to find Appellant guilty as an accomplice based **solely** on her aiding Mr. Alvarado after he committed the robbery and the murder. An alleged accomplice aiding a principal after the principal has committed a crime is not, ***"in itself,"*** sufficient to establish accomplice liability. Rather all of the other requisite elements for accomplice liability must also be proven, including knowledge than an offense has been committed, intent to

promote or facilitate the commission of the offense and soliciting, commanding, encouraging or requesting its commission. Thus, the Court's response gave the jury the option of convicting Appellant based on an invalid and inadequate understanding of accomplice liability.

Pet.'s Reply 6 n.2 (emphasis in original).[2] This single paragraph did not fairly present the federal due process basis of Alvarado's claim. Nowhere in Alvarado's direct appeal brief did she reference the federal Due Process Clause. Moreover, she did not cite any federal cases but cited only Pennsylvania cases decided on the grounds of Pennsylvania substantive criminal law.[3] Nor did she reference the concept of due process or any other general constitutional concepts; instead, she argued only that the trial court "committed legal error" and that the jury convicted her "based on an invalid and inadequate understanding of accomplice liability." *See McCandless*, 172 F.3d at 262 (holding that petitioner had not fairly presented federal claim to state courts where he cited only state cases addressing state evidence law and did not mention the terms "constitution," "due process," or even "fair trial").

Alvarado's argument on direct appeal resembles the petitioner's argument in *Keller v. Larkins*, 251 F.3d 408, 414-15 (3d Cir. 2001). In that case, the petitioner challenged the admission of certain evidence at trial on state direct appeal but cited only state cases based on state law and argued in terms of Pennsylvania evidence law. *Id.* at 414. The petitioner did not

---

[2]     The state court record did not contain Alvarado's brief on direct appeal to the Superior Court. However, her brief is available on Westlaw as a filing associated with *Commonwealth v. Alvarado*, 53 A.3d 933 (Table), No. 3289 EDA 2010 (Pa. Super. Ct. June 19, 2012); *see* Brief for Appellant, 2011 WL 7139210.

[3]     *See* Pet.'s Direct Appeal Brief, 2011 WL 7139210 at *21-23. Petitioner cited *Commonwealth v. McCleary*, 381 A.2d 434 (Pa. 1977), which the Pennsylvania Supreme Court decided based on the Pennsylvania substantive law of felony murder under the criminal code; *Commonwealth v. Lambert*, 795 A.2d 1010, 1024 (Pa. Super. Ct. 2002), which addressed a sufficiency of the evidence argument under Pennsylvania law; and *Commonwealth v. Rosario-Hernandez*, 666 A.2d 292, 299 (Pa. Super. Ct. 1995), which held that the evidence at the defendant's trial justified a jury instruction on accomplice liability but not accessory after the fact.

mention either the federal Constitution or any judicial decision based on federal constitutional law and made only passing references to the concept of a "fair trial" in his briefs before the state courts. *Id.* As a result, the Third Circuit Court of Appeals held that the petitioner had not fairly presented his federal due process claim to the Pennsylvania courts. *Id.* at 415.

Similar to the petitioner's state court arguments in *Keller*, Alvarado's state court briefs contain no arguments that would have given the Pennsylvania Superior Court notice of her federal due process claim. Moreover, like the Pennsylvania courts that reviewed the petitioner's conviction in *Keller*, the Pennsylvania Superior Court "understandably confined its analysis to the application of state law" in resolving Alvarado's direct appeal. *Id.* (quoting *Duncan*, 513 U.S. at 366). The Pennsylvania Superior Court found that Alvarado had waived her challenge to the trial court's jury instruction and observed that "even if [Alvarado] had not waived this issue, her argument would fail for the reasons set forth by the trial court in its Rule 1925(a) opinion."[4] *Commonwealth v. Alvarado*, 53 A.3d 933 (Table), No. 3289 EDA 2010, slip op. at 10 and n.3 (Pa. Super. Ct. June 19, 2012). Alvarado therefore did not fairly present her freestanding due process claim to the state courts.

---

[4]    The trial court's 1925(a) opinion relied only on state law in resolving Alvarado's claim of error. Alvarado claimed that "the Court committed legal error by giving a supplemental jury instruction that incorrectly advised the jury that the defendant could be convicted on an accomplice liability theory merely by aiding after a crime, specifically, by driving away from the crime scene." *Commonwealth v. Alvarado*, CP-51-CR-0001257-2009, slip op. at 10 (Pa. Com. Pl. April 13, 2011). The trial court rejected this argument, noting that under Pennsylvania law, a getaway driver can be guilty of a crime under accomplice liability if the driver has knowledge of the crime prior to driving away from the scene. *Id.* at 13. The court concluded that Alvarado could be found guilty if the jury found that she had knowledge of the crimes committed before driving away and that, given the evidence presented at trial, the court "did not commit legal error by instructing the jury that the defendant could be found guilty under an accomplice liability by driving with the co-defendant away from the scene." *Id.* at 14.

Nor did Alvarado fairly present the due process issue as a basis for an ineffective assistance of counsel claim on collateral review. Alvarado did present a claim that her trial counsel provided ineffective assistance for failing to object to the written supplemental jury instruction in her PCRA petition. However, Alvarado based her argument on state law, claiming that the trial court "committed legal error" and her trial counsel should have objected because "the law clearly provides that one cannot be held criminally liable for acts committed after a crime has occurred." Pet.'s PCRA Brief, at 16. Again, Alvarado made no reference to the concept of due process, the United States Constitution, or constitutional concepts, and cited no federal cases or Pennsylvania cases addressing federal constitutional law.

Although she raised ineffective assistance of trial counsel for failing to object to the jury instruction, she did not raise the federal basis of that objection that her trial counsel allegedly overlooked. For purposes of exhaustion in state court, not all ineffective assistance of counsel claims are created equal. A claim of ineffective assistance of counsel is not fairly presented if a petitioner raised an ineffectiveness claim in state court that alleged counsel was ineffective for a different reason. *See Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986) (holding that state prisoner had not fairly presented his ineffective assistance of counsel claim based on alleged failure of counsel to protect prisoner's juvenile status for purposes of federal habeas petition where ineffective assistance of counsel claim presented to state courts related to counsel's advice on guilty plea and explanation of plea bargain); *Holloway v. Zimmerman*, No. CIV. A. 86-3138, 1990 WL 29656, at *2 n.9 (E.D. Pa. Mar. 16, 1990) ("In *Gibson* the Third Circuit held that the petitioner could not use a sixth amendment ineffective assistance of counsel claim to encompass all allegations of ineffectiveness.") (collecting cases). Thus, Alvarado did

not exhaust her claim that her trial counsel was ineffective for failing to raise the due process objection.

Alvarado did not fairly present her due process claim or her claim that her trial counsel was ineffective for failing to object to the alleged due process violation in Pennsylvania state court; therefore, she did not exhaust these claims. She cannot now go back and exhaust those claims in a subsequent PCRA petition because the time for her to bring a new PCRA petition has expired. *See* 42 Pa. C.S. § 9545(b)(1) (requiring a PCRA petition to be filed "within one year of the date the judgment becomes final").[5] Because Alvarado cannot exhaust her unexhausted claims, they are procedurally defaulted.

## B.    The *Martinez* Exception to Procedural Default

In 2012, the Supreme Court recognized a narrow exception to the rule barring review of procedurally defaulted habeas claims in *Martinez v. Ryan*: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. 1, 9 (2012). This exception applies when a petitioner can show that: (1) his procedurally defaulted ineffective assistance of trial counsel claim is "substantial" or has "some merit" and (2) his state-post conviction counsel was "ineffective under the standards of *Strickland v. Washington*." *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Notably, the *Martinez* exception on its own does not entitle a petitioner to relief; rather,

---

[5]    Judgment becomes final at the conclusion of direct review, which includes discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking that review. 42 Pa. C.S. § 9545(b)(3); *Commonwealth v. Owens*, 718 A.2d 330 (Pa. Super. Ct. 1998). Here, because Alvarado's conviction became final well over a year ago, any attempt to now go back and file a new PCRA petition would be barred as untimely under 42 Pa. C.S. § 9545(b).

"[i]t merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Id.* at 939 (quoting *Martinez*, 566 U.S. at 17).

To demonstrate that his claim has "some merit," a petitioner must "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 938 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)). Importantly, "substantial," or having "some merit" is different from the standard applied on the merits under *Strickland v. Washington*: "substantiality is a notably lower standard than the proof of prejudice required by *Strickland*'s second prong." *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 764 (3d Cir. 2018).

The Third Circuit Court of Appeals recently clarified the second *Martinez* requirement, ineffective assistance of postconviction counsel. The Third Circuit explained in *Workman* that a petitioner shows ineffective assistance of postconviction counsel when she can show that "state postconviction counsel's performance fell below an objective standard of reasonableness."[6] 915 F.3d at 941.

---

[6]     Ordinarily, the *Strickland* standard contains both a "performance" and a "prejudice" element: to sustain a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness" and that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 938 (3d Cir. 2019) (citing *Strickland*, 466 U.S. at 694). To show ineffective assistance of postconviction counsel, the prejudice element would require a petitioner to show that his state postconviction counsel could have obtained a different result had he presented the now-defaulted claim of ineffective assistance of trial counsel—"[i]n other words, he must prove the merits of his underlying ineffective-assistance-of-trial-counsel claim in order to excuse the procedural default of that claim and obtain consideration on the merits." *Id.* at 938-39.

    The Third Circuit Court of Appeals found this situation, wherein showing prejudice from postconviction counsel to obtain review of a defaulted claim's merits requires a petitioner to prove the merits of his defaulted claim, anomalous considering that *Martinez* does not establish an independent basis for relief, but merely allows a court to consider a defaulted claim on the

The *Martinez* exception only applies to permit review of defaulted claims of ineffective assistance of trial counsel. *See Davila v. Davis*, ––– U.S. ––––, 137 S. Ct. 2058, 2065 (2017) (declining to extend *Martinez* to defaulted claims of ineffective assistance of appellate counsel); *Murray v. Diguglielmo*, No. 09-4960, 2016 WL 3476255, at *4 (E.D. Pa. June 27, 2016) ("These claims do not involve ineffective assistance of [trial] counsel. *Martinez* does not apply."). Therefore, *Martinez* does not apply to Alvarado's freestanding due process claim, and the procedural default of the claim precludes federal review of the alleged due process violation as a freestanding basis for habeas relief. *See Tyson v. Smith*, No. 3:13-CV-2609, 2019 WL 462137, at *7 (M.D. Pa. Feb. 6, 2019) (holding that *Martinez* cannot excuse procedural default of claim that trial court's admission of prior bad act evidence violated petitioner's due process rights).

Alvarado's procedurally defaulted claim of ineffective assistance of trial counsel can be excused under *Martinez*, however. The Court concludes that Alvarado presents a substantial claim, for reasons which the Court will analyze below on the merits under the more stringent *Strickland* standard. For now, the Court concludes that "the issues presented [are] adequate to deserve encouragement to proceed further." Additionally, the Court concludes that Alvarado's PCRA counsel provided ineffective assistance for failing to argue the federal due process basis for her ineffective assistance of trial counsel claim. In Pennsylvania, it is PCRA counsel's

---

merits. *Id.* at 939. The *Workman* court therefore followed the Seventh and Ninth Circuits and held that, as long as a petitioner can demonstrate deficient performance of postconviction counsel under *Strickland*'s first element, that the default of a "substantial" claim of ineffective assistance of trial counsel can itself establish prejudice under the second *Strickland* element. In other words, *Workman* seems to have simplified the *Strickland* analysis applied to postconviction counsel under *Martinez*: when the defaulted ineffective assistance claim is "substantial" under *Martinez* and postconviction counsel's performance was deficient, a petitioner need not show prejudice other than the fact that a potentially viable claim was defaulted. The *Workman* court opined that "[t]his rule is sensible, workable, and a proper reading of *Martinez*." *Id.* at 941.

responsibility to raise any ineffective assistance of counsel claims to avoid forfeiting them under state law. *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 243–44 (3d Cir. 2017). Since collateral review with new counsel is the first possible instance in which to raise claims of ineffective assistance of trial counsel, PCRA counsel's failure to raise an ineffectiveness claim in the initial petition means that "no state court at any level will hear the prisoner's claim." *Id.* (quoting *Martinez*).

There is a "strong presumption" that an attorney's decision to pursue some claims and decline to pursue others is a tactical choice. *Workman*, 915 F.3d at 942. However, "[a] petitioner may rebut the suggestion that the challenged conduct reflected merely a [tactical] choice . . . by showing that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* Alvarado's postconviction counsel raised the ineffectiveness of trial counsel for failing to object to the written supplementary jury instruction as improper under state law. However, PCRA counsel overlooked the "significant and obvious" due process implications of the written supplemental jury instruction and trial counsel's failure to object on that ground. This Court can discern no strategic reason why PCRA counsel would not raise the federal due process basis of the objection as well. *See id.* (finding PCRA counsel ineffective where counsel overlooked obvious issue in favor of weaker claim); *Bey*, 856 F.3d at 244 (finding PCRA counsel ineffective where there was no obvious strategic basis for not raising claim that trial counsel was ineffective).

Having shown that she presents a substantial claim of ineffectiveness of trial counsel and that her postconviction counsel's performance was deficient for allowing the default of that claim, Alvarado has shown that the procedural default of her ineffective assistance of counsel claim may be excused under *Martinez*. This Court now turns to the merits of that claim.

**C.  Ineffective Assistance of Counsel for Failing to Object to Jury Instruction that Violated Due Process**

Once procedural default is excused, "review of a petitioner's claim is de novo because the state court did not consider the claim on the merits." *Bey*, 856 F.3d at 236. Alvarado claims that her trial counsel was ineffective for failing to object to the trial court's written answer to the jury's question concerning accomplice liability because the answer allowed the jury to convict Alvarado of second degree murder without finding that she possessed the *mens rea* required for that offense on an accomplice liability theory, and thus violated due process.

To prove ineffective assistance of counsel, a petitioner must prove: (1) that his counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bey*, 856 F.3d at 238 (citing *Strickland*, 466 U.S. at 668). To prevail on her ineffectiveness claim, Alvarado must show that there was a due process problem with the jury instructions, counsel failed to raise the issue, and the problem caused prejudice. *See Bowers v. Wenerowicz*, No. CV 13-05550, 2016 WL 9306253, at *16 (E.D. Pa. Sept. 30, 2016) (analyzing claim of ineffective assistance of trial counsel based on failure to object to jury instruction that violated due process), *report and recommendation approved*, 2017 WL 2981226 (2017). The Court addresses the substance of the due process issue first.

The Due Process Clause of the United States Constitution requires proof beyond a reasonable doubt of every element necessary to constitute a crime. *In re Winship*, 397 U.S. 358, 364 (1970). A jury instruction violates due process when it relieves the government of its burden of proving every element beyond a reasonable doubt. *See Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009); *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979). In evaluating a jury

instruction, a court asks whether there is "some 'ambiguity, inconsistency, or deficiency' in the instruction, such . . . that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Sarausad*, 555 U.S. at 190–91 (quoting *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam), and *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). "In making this determination, the jury instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.* at 191 (quoting *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973))). As a result, a due process analysis "depends as much on the language of the court's charge as it does on the particularities of a given case" and requires a court to consider "each trial's unique facts, the narratives presented by the parties, the arguments counsel delivered to the jurors before they retired to deliberate, and the charge as a whole." *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011).

### 1. Second Degree Murder and Accomplice Liability Under Pennsylvania Law

Alvarado was convicted of second degree murder and robbery on an accomplice liability theory. As the R&R recognized, second degree murder is Pennsylvania's codification of the felony murder rule, which allows a perpetrator of certain violent felonies to be convicted of murder[7] for any homicide committed "while defendant was engaged as a principal or an accomplice in the perpetration of [the] felony." 18 Pa. C.S. § 2502(b). The statute defines "perpetration of a felony" as "the act of the defendant in engaging in or being an accomplice in

---

[7] "In felony-murder, the malice necessary to sustain a conviction for murder is inferred from the underlying felonious act." *Com. v. McCarthy*, No. 11 WDA 2014, 2016 WL 193402, at *19 (Pa. Super. Ct. Jan. 15, 2016) (quoting *Com. v. Spallone*, 406 A.2d 1146, 1147 (Pa. Super. Ct. 1979)).

the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary, or kidnapping." 18 Pa. C.S. § 2502(d). Thus, Alvarado could be convicted of second degree murder if the jury found that a homicide occurred while she was acting as an accomplice to a robbery.[8]

Under Pennsylvania's accomplice liability statute, "[a] person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." 18 Pa. C.S. § 306(a). In other words, "[a]ccomplice liability does not create a new or separate crime; it merely provides a basis of liability for a crime committed by another person." *Commonwealth v. Gross*, 101 A.3d 28, 35 (Pa. 2014).

A person is an accomplice in the commission of a crime if: "(1) with the intent of promoting or facilitating the commission of the offense, he: (i) solicits such other person to commit it; or (ii) aids or agrees or attempts to aid such other person in planning or committing it; or (2) his conduct is expressly declared by law to establish his complicity." 18 Pa. C.S. § 306(c). The Third Circuit Court of Appeals has summarized the prosecution's burden of proof in establishing accomplice liability as follows:

> To establish accomplice liability, the Commonwealth "must show by substantive evidence that the accused was an 'active partner in the intent to commit [the crime].'" *Commonwealth v. Wright*, 235 Pa. Super. 601, 344 A.2d 512, 514 (1975) (quoting *Commonwealth v. McFadden*, 448 Pa. 146, 292 A.2d 358 (1972)). "An agreement is required, as only aid is required" and "[t]he least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice." *Commonwealth v. Graves*, 316 Pa. Super. 484, 463 A.2d 467, 470 (1983). Evidence establishing that a defendant was an accessory *after the fact* is alone insufficient to hold an individual liable as an accomplice. *Commonwealth v. McCleary*, 475 Pa. 597, 381 A.2d 434, 436 (1977).

---

[8]     In Pennsylvania, a defendant commits robbery if "in the course of committing a theft," he either "inflicts serious bodily injury upon another" or "commits or threatens immediately to commit any felony of the first or second-degree." 18 Pa. C.S. § 3701(1). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa. C.S. § 3701(2).

*Rodriguez v. Rozum*, 535 F. App'x 125, 132 (3d Cir. 2013) (emphasis in original, footnote omitted).

Thus, accomplice liability requires a specific *mens rea* element: the intent to promote or facilitate commission of the offense. *In re K.M.*, No. 2721 EDA 2014, 2015 WL 7354644, at *3 (Pa. Super. Ct. Nov. 20, 2015) (quoting *Commonwealth v. Davenport*, 452 A.2d 1058, 1062 (Pa. Super. Ct. 1982) ("The intent required for criminal conspiracy is identical to that required for accomplice liability. In both [instances], a defendant must act with the 'intent of promoting or facilitating the commission of the offense.'")). This *mens rea* element is the focal point of Alvarado's argument regarding the jury instructions.

> **2.      The Jury Instructions on Accomplice Liability During Alvarado's Trial**
>
> **(a)      The trial record indicates that the jury struggled to understand accomplice liability; that the court <u>verbally</u> read correct jury instructions on the subject three times, but on the fourth time issued a <u>written</u> ambiguous and misleading instruction on the same topic omitting reference to *mens rea*.**

During Alvarado's trial, the trial court instructed the jury four times concerning accomplice liability. The judge gave the following initial instruction concerning accomplice liability to the jury before it began deliberating on July 14, 2010:

> There is a second way that a defendant can be proved liable for the conduct of another person. That is when the defendant is an accomplice of the person who actually commits the crime at issue.
>
> To be an accomplice, a person does not have to agree to help someone else. The person is an accomplice if she, on her own, acts to help the other person commit the crime.
>
> More specifically, you may find that the defendant Cynthia Alvarado was an accomplice of Oscar Alvarado in this case if the following two elements are proved to your satisfaction beyond a reasonable doubt:

First, that Cynthia Alvarado had the intent of promoting or facilitating the commission of the offense of robbery.

And, second, that Cynthia Alvarado solicited, commanded, encouraged, requested or aided and agreed – or agreed to aid Oscar Alvarado in committing that.

It is important to understand that a person is not an accomplice merely because she is present when a crime is committed or knows that a crime is going to be committed.

To be an accomplice, Cynthia Alvarado must have specifically intended to help bring about the crime by assisting Oscar . . . Alvarado in commission of that robbery in some fashion.

N.T. 7/14/2010, at 46:18-47:24. This instruction conformed closely to the standard Pennsylvania jury instruction on accomplice liability. *See* Pennsylvania Suggested Standard Jury Instructions (Criminal) 8.306(a)(1).

### (b)     The Second Verbal Instruction on Accomplice Liability

The jury began deliberations and later asked the court to redefine accomplice liability.

N.T. 7/14/2010, at 75. In response, the trial court instructed as follows, largely reiterating the substance of the earlier standard instruction:

And in terms of accomplice liability, accomplice liability is another way that a person can be held liable or responsible for conduct that's actually committed by another person, and that is only if you find in this case that Cynthia Alvarado had the intent of promoting or facilitating the commission of the offense of robbery, and that Cynthia Alvarado commanded, encouraged, requested or aided Oscar Alvarado in any way regarding that robbery.

It's important to understand that a person is not an accomplice merely because she is present when a crime is committed or knows that a crime is being committed or going to be committed. To be an accomplice, Cynthia Alvarado must have specifically intended to help bring about the crime by assisting Oscar Alvarado in its commission in some fashion or, as I said, by encouraging, soliciting, commanding, et cetera, that he commit it.

*Id.* at 80:16-81:13. In response to another question from the jury concerning the relationship between conspiracy and accomplice liability, the trial court provided another supplemental instruction:

> And so if you find that there was a conspiracy—that is, an agreement, an understanding, a shared criminal intent that a crime would be committed—and you find that there was an overt act in furtherance of that agreement, then you have a conspiracy; and it is often said that the act of one is the act of all.
>
> . . .
>
> Accomplice liability, you don't have to have proof beyond a reasonable doubt that there was an agreement, but you do need to have proof that there was a specific decision to aid, to abet, to encourage, to facilitate, to do all of these things, and that there was still a shared criminal intent. . . . And for the accomplice liability, as I was just indicating, you must be convinced beyond a reasonable doubt that Cynthia Alvarado had the intent of promoting or facilitating the commission of the robbery and that she solicited, commanded, encouraged, aided, agreed to aid Oscar Alvarez [sic] in committing it.

*Id.* at 97:6-13; 17-23; 98:4-11. After this instruction, the court dismissed the jury for the day. *Id.* at 105.

### (c)     The Third Verbal Instruction on Accomplice Liability

The following day, the jury once again asked the court to define accomplice liability. In response, the court explained:

> So if you find beyond a reasonable doubt that Cynthia Alvarado had the intent of promoting or facilitating the commission of the offense of robbery, and that she solicited, commanded, encouraged, requested Oscar Alvarado to commit it or aided or agreed to aid him in committing the offense of robbery, then she is an accomplice. And as an accomplice, she would have certain liability for the conduct that Oscar Alvarado engaged in.
>
> And all of that is obviously for you to decide, what were those things, and so if you find beyond a reasonable doubt, then she had liability or responsibility for the conduct of another.
>
> So what we mean by liability for the conduct of another is that anything that was reasonably foreseeable, if she encouraged him or had the intent of promoting or facilitating his participation in the robbery and a robbery occurred and you find

that a robbery did occur beyond a reasonable doubt, then she is guilty of robbery, even though she did not go up and perform an actual robbery.

And if a person dies in relation to all of that, then you have to determine: Are you also going to hold her liable for that?

And so that's what accomplice liability means is: You have a liability for the actions that you involve yourself in knowingly, intentionally, voluntarily. And, as I said, you must first, however, find that she did have, beyond a reasonable doubt, that she had the intent of promoting or facilitating the commission of the offense of a robbery and that she then also solicited, commanded, encouraged, requested, committed, or aided or agreed to aid him in committing it.

And so hopefully that clarifies it a little bit more.

N.T. 7/15/2010, at 4-7.

### (d)    The Jury Asks a Third Time for Help Understanding Accomplice Liability

Later that afternoon, the jury submitted a final question concerning accomplice liability: "Does aiding <u>after</u> a crime in itself constitute accomplice liability?" N.T. 7/15/2010, at 8 (emphasis in original). After discussing the question with counsel, the trial court concluded that the correct answer to the question was "It could." N.T. 7/15/10, at 9-13. Defense counsel suggested only that the court add the words "but not necessarily" to the proposed response, but the court rejected this suggestion. N.T. 7/15/2010, at 30. The trial court sent back a written response to the jury without objection.

### 3.    The Alleged Due Process Violation

### (a)    The Two-Word Written Ambiguous Response by the Court

Alvarado challenges the Court's written response to the final jury question: "It could." Alvarado reads the trial court's "It could" as a simple "yes." She emphasizes the phrase "in itself" in the jury's question and argues that the trial court's written answer instructed the jury

that merely providing aid after the fact can establish accomplice liability "in itself"—that is, *regardless of the alleged accomplice's intent*. Pet.'s Objs. 3. As a result, Alvarado argues, the instruction relieved the prosecution of its burden of proving beyond a reasonable doubt that she had the *mens rea* required for accomplice liability under Pennsylvania law, specifically, the intent to promote or facilitate the robbery. *Id.* The government responds that Alvarado's argument "is built on the faulty premise that one can never be an accomplice based solely on acts committed after a crime." Resp. 14. Yet the government, too, recognizes its burden of proving *mens rea*, stating that "[c]onduct after a crime may, by itself, support a finding of accomplice liability where, as here, *the accused knows a crime has been committed and actively aids the principal after the fact*." *Id.* (emphasis added). Thus, to the extent that the government argues that the trial court's written instruction was proper, the government reads the trial court's "It could" as "It could— *as long as the accused knows a crime has been committed and actively aids the principal after the fact*."

> **(b)      Earlier jury instructions that contradict and do not explain a constitutionally infirm instruction will not cure a defective, deficient instruction.**

The trial court did instruct the jury exhaustively on the Pennsylvania law of accomplice liability, including the required *mens rea* element. Although this Court must analyze the challenged instruction in the context of the instructions as a whole, "[l]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." *Francis v. Franklin*, 471 U.S. 307, 322 (1985). "While a single defect does not necessarily make an instruction erroneous, . . . other language in the instruction does not always serve to cure the error. This is so even when other language correctly explains the law." *Bey*, 856

F.3d at 241 & n.54 (ellipsis in original) (quoting *Whitney v. Horn*, 280 F.3d 240, 256 (3d Cir. 2002) (citing *Franklin*, 471 U.S. at 222)). This is because "[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Franklin*, 471 U.S. at 322.

The trial court's first instruction concerning accomplice liability followed the standard Pennsylvania instruction. The trial court later gave three supplemental instructions in response to the jurors' requests that the trial court define accomplice liability again and explain its relationship to conspiracy; each of these supplemental instructions correctly explained accomplice liability. The jury's first request after it began deliberations asked the trial judge to redefine accomplice liability, and she restated the substance of the standard instruction she had given before the jury began deliberating. The jury's second request asked the trial judge to explain the relationship between conspiracy and accomplice liability, and the trial judge restated the elements of those theories of liability. The jury's third request asked for the definition of accomplice liability again, and the trial judge explained the elements. Each of these instructions contradicted the subsequent challenged instruction by instructing the jury that accomplice liability requires aiding the principal and the intent to promote or facilitate the offense—in other words, that aiding after a crime does not "in itself constitute accomplice liability." However, the correct instructions do not explain or make explicit the implicit *mens rea* requirement the government wants to read into the trial court's written supplemental instruction in retrospect.

Furthermore, the previous correct instructions do not cure the ambiguous challenged instruction because the challenged instruction likely had greater salience in the mind of the jury. The three previous supplemental instructions shared a common pattern: in each case, the jury sought clarification of legal concepts in general terms and in response, the trial court provided

general explanations of Pennsylvania law concerning accomplice liability and conspiracy. By contrast, the jury's fourth request for clarification of accomplice liability asked the trial judge to apply the concept to a specific set of facts—whether aiding after the fact in itself can establish accomplice liability. Instead of once again explaining the concept of accomplice liability generally, the trial judge gave the jury a specific response: "It could." Additionally, each of the previous instructions was the equivalent of several written paragraphs, which the trial judge delivered verbally. The challenged supplemental instruction was a two-word response to the jury's specific question and was delivered in writing. This concise but ambiguous <u>written instruction</u> likely stood out more to the jury than the previous <u>verbal instructions</u> that correctly explained the *mens rea* for accomplice liability. As a result, there is good reason to be concerned that the jury likely gave the specific <u>written instruction</u> greater weight than the generalized <u>verbal instructions</u> it had received before.

>    **(c)      A specific written instruction on a key issue likely carries greater weight with a jury than previous generalized verbal instructions.**

The Supreme Court of the United States recognized that a jury will likely give greater weight to a judge's answer to a specific question in *Bollenbach v. United States*, in which the Court overturned the conviction of a defendant for conspiracy to transport securities in interstate commerce knowing them to have been stolen. 326 U.S. 607 (1946). In response to a question from the jury concerning the defendant's knowledge that the bonds at issue had been stolen, the trial judge instructed them that "possession of stolen property in another State than that in which it was stolen shortly after the theft raises a presumption that the possessor was the thief and transported stolen property in interstate commerce," which erroneously removed an error of proof, *mens rea*, from the government's case. *Id.* at 609. The Supreme Court rejected the

government's argument that the error was only a "cursory, last-minute" instruction and emphasized that a specific instruction on a key issue likely carries greater weight with a jury than a previous generalized instruction:

> The influence of the trial judge on the jury is necessarily and properly of great weight, and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word. If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptional and unilluminating abstract charge.

*Id.* at 612 (citation and quotation omitted). The Supreme Court recognized that the jury's questions clearly indicated that the jurors were confused concerning the *mens rea* element of the offense as it related to conspiracy and put the burden on the trial judge to offer clarity, noting that "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Id.* at 612-13.

So too, in Alvarado's trial, did the jury make explicit the difficulties they had understanding accomplice liability. The judge did not "clear them away with concrete accuracy," but instead gave an ambiguous and likely misleading instruction. The Court cannot conclude that this specific instruction on a key issue of Alvarado's trial was cured by the previous "unexceptional and unilluminating" instructions. Reviewing the written answer to the jury's question in the context of the trial record, there is "'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving" that Alvarado acted with the intent to promote or facilitate the robbery. *Sarausad*, 555 U.S. at 191 (quoting *Estelle*, 502 U.S. at 72 (quoting *Boyde*, 494 U.S. at 380)).

Although the arguments of counsel "carry less weight with a jury" than the trial court's instructions, counsel's arguments at Alvarado's trial bolster the conclusion that it is reasonably likely that the jury misapplied the trial court's supplemental instruction and convicted her by

finding the required *actus reus* for accomplice liability without the corresponding *mens rea*.

*Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 287 (3d Cir. 2018) (citing *Sarausad*, 555 U.S. at 195) (analyzing arguments of counsel and evidence at trial).

At trial, the prosecution relied primarily on two statements that Alvarado allegedly made in the car to establish her intent: her statement before the robbery suggesting that Oscar should pull out his gun if he couldn't get a deal on additional drugs and her statement as they drove away after the shooting that she would "ride or die" with Oscar. The prosecutor emphasized these statements when arguing that Alvarado was an accomplice to the second degree murder:

> The judge will also explain accomplice liability to you, which means she is just as guilty of second-degree murder if she helped him. Helped him. And that is before, during, or after.
>
> The judge will ask you: Did she solicit, command, encourage, or request Oscar Alvarado to do anything? Yes. She specifically said, "If they don't give you a play, you know what to do. Just pull that shit out."
>
> Did she aid, agree to aid, attempt to aid the other person in committing it? Yes. This includes flight. She was his getaway driver. She is just as guilty of him – as him of second-degree murder. "That's why he loves me, because I ride or die with him."

N.T. 07/13/2010, 316:23-317:16.

The sole source of evidence that Alvarado had made these two statements was the testimony of Maiced Beltran, an old friend of Alvarado's who was sitting in the back seat of the car when the shooting occurred. Beltran testified that as Oscar Alvarado was walking away from the car towards the park to buy more pills, Alvarado called him back to the car and told him through the open driver's-side window, "Cuz, you know what to do. If they don't give you a play, just pull that shit out," referencing a handgun Oscar was carrying. N.T. 7/12/2010, at 112:8-114:17. Beltran also related that, as Alvarado was driving away from the scene following

the shooting, she stated, "That's why he loves me. That's why we ride or die." N.T. 07/12/2010, at 129:11-130:6.

However, Beltran's credibility became an issue at trial. Beltran testified that she had taken Xanax before the robbery and PCP in the evening before her arrest. N.T. 7/12/2010, at 96, 138-141. She admitted that she was still high when the police arrested her and took her for questioning. N.T. 7/12/2010, at 174-75. According to Beltran, the police told her that she was a suspect in the murder and insisted that the crime had been planned and that she knew what had happened. N.T. 7/12/2010, at 172-75. She testified that the arresting officers "didn't want to accept what I was ready to tell them. They just kept on and on and on" until Beltran gave her statement implicating Alvarado. N.T. 7/12/2010, at 176-77.

Given the importance of Beltran's testimony to the government's case, Alvarado's trial counsel attacked her credibility in his closing argument. He highlighted that Beltran was under the influence of drugs at the time of her statement and suggested that the police coerced Beltran into implicating Alvarado:

> Unfortunately, Mrs. Beltran was threatened by the police with being charged in this case. She told you she was scared to death. She was high. When I asked her was she – was she loaded at the time that the police came, I think her comment was, "Was I ever."
>
> And, you know, she was—she was—suddenly she's in the car. According to her, she has no idea that anybody's been killed. Sounds like—it sounds like from the evidence that Ms. Alvarado had no idea that anyone's been killed. And she—and they both are suddenly finding themselves at 106 West Thompson street at 8 o'clock at night, after doing all these pills and smoking PCP and whatever else they did; and they're sitting there handcuffed and told they're now being arrested for murder.
>
> Now Ms. Alvarado—Ms. Beltran does not give a statement until 2:30 in the morning. That's when she starts giving a statement. She's held in a windowless, small room with a table and a chair. She has no idea how much time has gone by; but she's high, so she knows—she says it's several hours, and it was very long.

And she's yelled at by one officer. She's talked nicely to by another officer. And I would respectfully suggest to you that it's a classic good cop/bad cop scenario. She didn't want to be charged. And they didn't want to take a statement from her until she was willing to say exactly what they wanted to hear, which was, in part, to get Cynthia Alvarado involved in this case. That's why it took her so long. . . .

. . . So I would suggest to you, number one, that her statement was gotten from the police after they kept her in for hours under those conditions when she was scared to death that she was going to—that she was going to be charged for a murder and put in the same position as these defendants.

N.T. 07/13/2010, at 251:21-253:8; 253:15-21.

The record suggests that the jury may have accepted defense counsel's argument and may have given little weight to Beltran's testimony. Alvarado was also tried for criminal conspiracy. Under Pennsylvania law, a person is guilty of criminal conspiracy to commit a crime if, "with the intent of promoting or facilitating its commission," she agrees with another person to commit, attempt, or solicit the crime or agrees to aid the other person in planning or committing the crime. 18 Pa. C.S. § 903. The prosecutor relied on Alvarado's alleged statement before the robbery, as related by Beltran, to establish Alvarado's intent to promote or facilitate the robbery, and therefore the murder committed in the course of that robbery:

[Alvarado] is charged with second-degree murder, and there's two ways for you to get there: conspiracy and accomplice liability . . . The judge will define both of these for you.

Conspiracy basically means they were teammates. They were both down with committing that robbery. And how do we know she was in on the robbery? How do we know that she wanted him to commit the robbery, that she was his teammate? Because of that comment, "Cuz, if they don't give you a play, you know what to do. Just pull that shit out." There can be no clearer description of someone's participation in a robbery. She flat out told him to do it.

N.T. 07/13/2010, at 316:7-22.

However, the jury found Alvarado not guilty of conspiracy.[9] The trial judge's jury instruction before it began deliberating made clear that conspiracy, like accomplice liability, requires that the defendant have the intent to promote or facilitate the underlying offense:

---

[9]      The prosecution's theory seems to have shifted over the course of the trial from conspiracy to commit murder to conspiracy to commit robbery. The state court criminal docket lists the charge as "Criminal Conspiracy Engaging – Murder." However, in an initial discussion with the trial judge before voir dire on July 8, 2010, the prosecutor identified the charged object of the conspiracy as "to commit robbery and kill Marta Martinez." N.T. 07/08/2010, at 3:22-23. The trial judge sought clarification and asked whether the prosecution meant to pursue the theory that Alvarado and Oscar had agreed specifically to kill Marta Martinez; the prosecutor explained that the theory was that Alvarado and Oscar agreed to commit the robbery and the murder happened in the course of the robbery. N.T. 07/08/2010, at 4-5. The trial judge identified the incongruity between this theory, essentially conspiracy to commit robbery, and the charged conspiracy to commit murder, but left the issue unresolved, telling the prosecutor:

> It's your evidence. If you want to put it on, go ahead. It strains credibility from my perspective, and my perspective isn't the important one, that you're saying or alleging that they conspired to go kill Marta.

> She was the unwitting victim of him firing his gun from the small pieces of the evidence that I've heard and become aware of. But you're making it sound like that was their object, and I think that's a little farfetched.

N.T. 07/08/2010, at 5:18-6:5.

In her closing argument, as quoted above, the prosecutor argued the theory that Alvarado and Oscar formed an agreement—that is, entered a conspiracy—to commit robbery. During a discussion of another issue following closing argument, the trial judge recognized the shift in the prosecution's theory, stating:

> I discussed [before voir dire] whether or not it made sense that the conspiracy was to murder Marta Martinez, which I still have never heard one bit of information that would have led for that to be the conspiracy. But I said that was your business of what to do, and you did change that to conspiracy to rob.

N.T. 07/13/2010, at 322:24-323:6. The trial judge instructed the jury on conspiracy to commit robbery. Whether the conspiracy charge was conspiracy to commit murder or conspiracy to commit robbery does not affect the relevance of the conspiracy charge to the Court's due process analysis because the testimony of Maiced Beltran, especially her description of Alvarado encouraging Oscar to use his gun, is relevant to Alvarado's intent and whether she and Oscar formed an agreement, regardless of whether the object was to rob or to kill.

In order to find the defendants guilty of conspiracy to commit robbery, you must be satisfied, then, that the following three elements have all been proven beyond reasonable doubt.

First, that each defendant agreed with the other that one of them would engage in conduct that would constitute the crime of robbery.

Second, that each defendant intended to promote or facilitate the commission of the robbery; in other words, they shared the intention to bring about that crime or to make it easier to commit that crime.

And third, that either defendant did the overt act of robbing the person in the park.

N.T. 07/14/10, at 45:11-46:3.

The not guilty verdict on the charge of conspiracy suggests that the jury did not place great weight on Beltran's testimony, or more specifically, that the jury rejected Alvarado's statement before the robbery that Oscar should use his gun, as evidence of an agreement or shared intent to commit robbery.

Yet despite this apparent lack of faith in Beltran's testimony, the only evidence of Alvarado's statements that the prosecution relied on to show Alvarado's intent for purposes of accomplice liability, the jury found Alvarado guilty of second degree murder on an accomplice liability theory. However, conspiracy and accomplice liability have the same intent requirement under Pennsylvania law. *See Commonwealth v. Davenport*, 452 A.2d 1058, 1062 (Pa. Super. Ct. 1982) ("The intent required for criminal conspiracy is identical to that required for accomplice liability. In both [instances], a defendant must act with the 'intent of promoting or facilitating the commission of the offense.'")). The jury found Alvarado not guilty of conspiracy but guilty on an accomplice liability theory when the intent elements for those two crimes, and the evidence the government relied on to prove Alvarado's intent, were the same. This verdict suggests that the jury found no credible evidence of Alvarado's intent but convicted her of murder under

accomplice liability based on her actions alone—aiding after the crime "in itself." In doing so, the jury applied the trial court's written supplemental instruction in a way that allowed them to convict Alvarado on an accomplice liability theory without finding that she possessed the required *mens rea*.

The Court concludes that the trial court's written response to the jury's question violated Alvarado's federal due process rights. The jury clearly struggled with the concept of accomplice liability throughout its deliberations. In response to a specific question, the trial court gave an ambiguous written response that could be understood to instruct the jury that it could find Alvarado guilty of second degree murder on an accomplice liability theory without finding that she possessed the intent to further the robbery. At trial, the prosecution tried to prove Alvarado's intent primarily by relying on the testimony of a witness whose credibility Alvarado's defense counsel attacked. The jury's not guilty verdict on the conspiracy charge suggests that the jurors discounted this disputed testimony; that they nevertheless convicted Alvarado on an accomplice liability theory suggests that they did so without finding that she acted with the intent to further the robbery. Considering the challenged ambiguous instruction in light of the jury instructions as a whole and the arguments and evidence at trial, the Court finds a reasonable likelihood that the jury applied the trial court's written supplemental instruction in a way that relieved the government of its burden of proving every element of the crime of second degree murder on an accomplice liability theory beyond a reasonable doubt.

#### 4.    *Strickland* Analysis of Failure to Object to Due Process Violation

Having shown that the trial court's written supplemental instruction violated due

process,[10] Alvarado must show that her trial counsel was ineffective for failing to object on that

basis and that the failure to object prejudiced her. To show that counsel was ineffective,

Alvarado must show that his performance was deficient, that is, that "counsel's representation

fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Alvarado's

trial counsel did not object to the written supplemental instruction and the Pennsylvania Superior

Court found any objection waived on direct appeal. *Commonwealth v. Alvarado*, 53 A.3d 933

(Table), No. 3289 EDA 2010, slip op. at 10 (Pa. Super. Ct. June 19, 2012). "Generally, trial

counsel's stewardship is constitutionally deficient if he or she 'neglect[s] to suggest instructions

that represent the law that would be favorable to his or her client supported by reasonably

persuasive authority' unless the failure is a strategic choice." *Bey*, 856 F.3d at 238 (finding trial

counsel ineffective for failing to object to jury instruction that violated due process) (quoting

*Everett v. Beard*, 290 F.3d 500, 514 (3d Cir. 2002))).

"[T]he state of the law is central to an evaluation of counsel's performance at trial"

because a "reasonably competent attorney patently is required to know the state of the applicable

law." *Everett v. Beard*, 290 F.3d 500, 509 (3d Cir. 2002), *abrogated on other grounds as*

*recognized in Priester v. Vaughn*, 382 F.3d 394 (3rd Cir. 2004). At the time of Alvarado's trial in

2010, longstanding Supreme Court precedent made clear that the Due Process Clause of the

United States Constitution requires proof beyond a reasonable doubt of every element necessary

to constitute a crime and that a jury instruction that relieves the government of its burden of

---

[10]    As explained above, Alvarado cannot obtain habeas relief based on an independent due process claim because she procedurally defaulted that claim. However, the Court considers the due process violation as the basis for a claim of ineffective assistance of trial counsel which is procedurally defaulted, but excused by *Martinez*.

proving every element beyond a reasonable doubt violates due process. *See In re Winship*, 397 U.S. 358, 364 (1970) ("Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979); *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009). This Court can discern no strategic reason for trial counsel's failure to object based on the due process violation. *See Bey*, 856 F.3d at 241 (stating that "[w]e can think of no strategic reason for defense counsel not to object to a charge that raises such due process concerns" where instruction required jury to accept eyewitness's identification of defendant as the shooter in murder case). Accordingly, the Court concludes that Alvarado's trial counsel's performance fell below the objective standard of reasonableness. *See Baker v. Horn*, 383 F. Supp. 2d 720, 777 (E.D. Pa. 2005) (holding that Petitioner's trial counsel fell below an objective standard of reasonable performance when he failed to object to the trial court's erroneous instruction permitting jury to convict petitioner of first degree murder under Pennsylvania law as an accomplice without finding that petitioner possessed the specific intent to kill).

Next, Alvarado must show that her trial counsel's deficient performance prejudiced her by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means "probability sufficient to undermine confidence in the outcome." *Id.* "The prejudice standard is not a stringent one and is less demanding than the preponderance standard." *Bey*, 856 F.3d at 242 (quoting *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001)) (quotations omitted). However, a petitioner must show "not merely that the errors at his trial

created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (quoting *United States v. Frady* 456 U.S. 152, 170 (1982)) (quotations omitted).

The Court concludes that Alvarado was prejudiced by the written supplemental jury instruction and her counsel's failure to object. As discussed above in the Court's analysis of the due process issue, the jury clearly struggled with the concept of accomplice liability, asking for clarification four times. Attempting to clear up the confusion, the trial court provided the written answer to the jury's question that allowed the jury to find Alvarado guilty on an accomplice liability theory if it found she provided aid after the crime without finding that she had the intent to promote or facilitate the offense. To prove Alvarado's intent to further the robbery, the government relied primarily on two alleged statements by Alvarado introduced solely through the testimony of Maiced Beltran, whose credibility Alvarado's counsel attacked. The prosecution also relied on Beltran's testimony to prove that Alvarado entered a conspiracy to commit robbery. The jury's not guilty verdict on the conspiracy charge suggests that it did not credit Beltran's testimony. If the jury did not credit Beltran's testimony, it likely did not find that Alvarado had the intent to promote or facilitate the robbery, and thus it convicted Alvarado on an accomplice liability theory without finding that she possessed the necessary *mens rea*.

The government introduced some evidence of Alvarado's intent other than Beltran's testimony. For example, the prosecution introduced Alvarado's statement to police admitting that she had witnessed the shooting before driving away. *See* N.T. 7/13/2010, at 200-201. The trial court relied in part on this statement in its 1925(a) opinion in concluding that the prosecution had introduced sufficient evidence to convict Alvarado of second degree murder. *See Commonwealth v. Alvarado*, No. CP-51-CR-1257-2009, slip op. at 15-16 (C.P. Phila. Apr. 19, 2011). However,

"*Strickland* prejudice does not depend on the sufficiency of the evidence despite counsel's mistakes." *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 599 (3d Cir. 2015) (citing *Strickland*, 466 U.S. at 694 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.")). Petitioner "need not show that counsel's deficient performance 'more likely than not altered the outcome in the case'"; instead, she must show only 'a probability sufficient to undermine confidence in the outcome.'" *Jacobs v. Horn*, 395 F.3d 92, 105 (3d Cir. 2005) (citing *Strickland*, 466 U.S. at 693-94).

The Court concludes that the error of Alvarado's trial counsel in this case in failing to object to the due process violation undermines confidence in the outcome. Given the government's primary reliance on Alvarado's statements in the car, both before and after the shooting, and the jury's apparent lack of confidence in Beltran's testimony and obvious confusion concerning accomplice liability, there is a reasonable probability that the outcome would have been different had Alvarado's trial counsel objected to the trial court's written response and had the jury been properly instructed on accomplice liability. Alvarado has demonstrated prejudice from her counsel's deficient performance and therefore has established ineffective assistance of her trial counsel under *Strickland*.

Alvarado is entitled to habeas relief on her claim that her trial counsel was ineffective for failing to object to the supplemental jury instruction that violated her due process rights. The Court grants Alvarado's petition in this respect and will issue a conditional writ of habeas

corpus.[11] Alvarado's sentence and convictions of robbery and second degree murder are vacated and the Commonwealth will have 120 days to retry Alvarado or release her from custody. *See Gibbs v. Frank*, 500 F.3d 202, 207 (3d Cir. 2007) (holding that 120-day period in which to retry successful habeas petitioner was "eminently reasonable").

Having found Alvarado entitled to a new trial based on her first claim of ineffective assistance of trial counsel, the Court does not address Alvarado's second ineffectiveness claim or her objections to the R&R's proposed resolution of the claim. *See Bey*, 856 F.3d at 244 ("Because we grant relief based on Bey's ineffective assistance of counsel claim pertaining to the *Kloiber* issue, we need not consider his ineffectiveness claim based on the prosecution's closing statements.").

## V. CONCLUSION

For the reasons discussed above, Alvarado is entitled to habeas relief on the first ground in her petition for habeas corpus. The Court therefore will issue a conditional writ of habeas corpus. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[11]     "Conditional" means that the government has the option of releasing Alvarado from custody or retrying her. *See Herrera v. Collins,* 506 U.S. 390, 403 (1993) ("The typical relief granted in federal habeas corpus is a conditional order of release unless the State elects to retry the successful habeas petitioner. . . .").